COLIN L. COOPER, California Bar #144291
COOPER LAW OFFICES
800 Jones Street
Berkeley, CA 94710
Telephone:  (510) 558-8400
Fax:  (510) 558-8401
colincooperdefense@yahoo.com

TIMOTHY M. BECHTOLD
BECHTOLD LAW FIRM, PLLC
PO Box 7051
Missoula, Montana 59807-7051
Telephone: (406) 721-1435
tim@bechtoldlaw.net

Attorneys for Defendant
DEMETRIUS WILLIAMS

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-37-BU-DWM |
| | ) | |
| Plaintiff, | ) | SENTENCING MEMORANDUM |
| | ) | |
| vs. | ) | |
| | ) | |
| DEMETRIUS WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**INTRODUCTION**

**STATEMENT OF CASE**

On September 19, 2007, a three-count Indictment was filed in United States District

Court for the District of Montana charging Mr. Williams with one count of conspiracy to distribute

cocaine, 21 U.S.C. §§ 841(a)(1), 846, and two counts of distribution of cocaine.  21 U.S.C. §

841(a)(1).  On December 12, 2007, Mr. Williams pled guilty to count one of the Indictment.

1     At the direction of the Court probation prepared a Presentence Report ("PSR"), the

2 report calculated that Mr. Williams' offense level was 31, and he is in criminal history category

3 one.  Thus, his guideline range is 108-135.  If the ten year mandatory minimum applies then his

4 guideline range is 120-135.

5 **STATEMENT OF FACTS**

6 **A.     FAMILY HISTORY**

7     Mr. Williams is twenty-five years old and as his family history demonstrates he has the

8 tools to turn his life around.  His father is a veteran who works two jobs to this day, while his

9 mother is a supervisor at a local hospital.  He has two older brothers and one older sister.

10     Mr. Williams grew up in Fairfield, California and graduated from high school with dreams

11 of playing football at a division one school.  While in high school, Mr. Williams' life was not

12 unlike a lot of teenagers.  He played on the football team, he worked minimum wage jobs at Red

13 Robin, Safeway, and for the City of Fairfield.  After graduating from high school his dream of

14 playing college football at a division one school was not realized.  Rather than giving up on that

15 dream he attended Contra Costa Community College.  While at Contra Costa he played

16 football, and after two years he was able to continue his football career when he earned a

17 scholarship to play football at Montana State.

18     While he was at Montana State Mr. Williams grandmother died.  Mr. Williams was

19 extremely close to his grandmother, and her death affected him greatly.  Rather than dealing

20 with the grief he felt he began to use marijuana on an almost daily basis.  As Mr. Williams wrote

21 in his letter to the Court, the death of his grandmother is not an excuse for his behavior, but his

22 grief and inability to deal with that grief does provide a backdrop into his destructive behavior.

23     The friends and family members who talked to probation, or submitted letters of

24 reference for Mr. Williams all expressed their surprise that Mr. Williams became involved in the

25

2

1   instant offense.  That was not the image of him that they had, and Mr. Williams will not allow the

2   last chapter in his life to be one of drug dealer.

3   **B.      PSR OBJECTIONS**

4         The Presentence report  ("PSR") calculates that Mr. Williams' offense level is 31.  That is

5   based on level 32 for the amount of drugs distributed, a two level adjustment for being a

6   manager or leader, and three-level reduction for acceptance of responsibility.  Based on the

7   FBI-302's from the various people that had knowledge of the drug conspiracy Probation

8   calculates that Mr. Williams was responsible for 12.24 kilograms.  Mr. Williams submits that he

9   is actually responsible for 9.70 kilograms of cocaine.  As probation notes this does not change

10  Mr. Williams' guideline calculations, however, Mr. Williams believes that it is more in line with his

11  actual conduct.  In regards to the quantity of drugs, the PSR summarizes Mr. Williams'

12  arguments and those will not be repeated in this brief.

13        However, Mr. Williams does object to the application of the enhancement for being a

14  leader pursuant to USSG § 3B1.1(c).  Probation argued that Mr. Williams supervised Richard

15  Gatewood and Randy Gatewood.  Mr. Williams did not supervise or manage Richard Gatewood.

16  When he was arrested for the instant offense Richard described himself as an equal to Mr.

17  Williams and his involvement supports that characterization.  Mr. Williams and Richard started

18  distributing cocaine together. Mr. Williams knew someone who could supply cocaine, while

19  Richard had the money to purchase the cocaine.  When Mr. Williams was not in Montana,

20  Richard continued selling drugs.

21        Mr. Williams did not supervise Randy Gatewood.  Randy met Mr. Williams while Mr.

22  Williams was attending Contra Costa Community College.  However, Randy did not arrive in

23  Montana until the beginning of 2006, and he did not actually see Mr. Williams with cocaine until

24  May 2006.  During his interview with the authorities Randy stated that he was Mr. Williams'

25  runner, however, he claimed that he never received any money for his work until he started

1 | charging Mr. Williams customers more money.  In fact Randy was in business for himself and

2 | did not report to Mr. Williams.

3 | **ARGUMENT**

4 | Mr. Williams requests that the court impose a sentence of 70 months.  Mr. Williams

5 | submits that a sentence of 70 months is reasonable and sufficient to meet the sentencing goals

6 | of 18 U.S.C. § 3553.  Based on the quantity of drugs that Mr. Williams admitted to distributing,

7 | the only way the Court may sentence Mr. Williams to 70 months is if the Court determines that

8 | he is eligible for the safety-valve.  *See* 18 U.S.C. § 3553(f).

9 | Mr. Williams arrived at a sentence of 70 months based on the following calculation.

10 | Based on the amount of cocaine distributed his initial offense level is 32.  He would receive a

11 | three level reduction for acceptance of responsibility.  *See* USSG § 3D1.1.  He would also

12 | receive a two level reduction pursuant to USSG § 2D1.1(b)(11).  To apply the two-level

13 | reduction the court must find that Mr. Williams satisfies the criteria for the safety-valve.  If the

14 | Court agrees that Mr. Williams is eligible for the safety-valve, his base offense level would be

15 | 27, and his guideline range would be between 70-87 months.  Mr. Williams respectfully submits

16 | that a sentence of 70 months is reasonable and satisfies the sentencing goals of § 3553.

**I.   A SENTENCE OF 70 MONTHS IS REASONABLE AND SUFFICIENT TO MEET THE SENTENCING GOALS OF 18 U.S.C. § 3553 IN LIGHT OF THE DEFENDANT'S YOUTH, LACK OF PRIOR CRIMINAL HISTORY, SENTENCES IN RELATED CASES, AND HIS PROSPECTS FOR THE FUTURE.**

20 | The ultimate goal of the court at sentencing is to give a sentence that is reasonable.

21 | *See United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006); *see generally United States*

22 | *v. Miqbel*, 444 F.3d 1173, 1175 fn.1 (9th Cir. 2006) (all sentencing guidelines and policy

23 | statements are advisory).  The guideline sentence is merely one of many factors the court may

24 | consider when fashioning an appropriate sentence.  Ultimately 18 U.S.C. § 3553(a)(1)-(7),

1   which sets forth several factors that should be considered, guides the court's discretion.

2   Specifically, the court should consider:

3       **(a) (1)** the nature and circumstances of the offense and the history and

4       characteristics of the defendant; **(2)** the need for the sentence imposed-- **(A)** to
    reflect the seriousness of the offense, to promote respect for the law, and to

5       provide just punishment for the offense; **(B)** to afford adequate deterrence to
    criminal conduct; **(C)** to protect the public from further crimes of the defendant;

6       and **(D)** to provide the defendant with needed educational or vocational training,
    medical care, or other correctional treatment in the most effective manner; **(3)** the

7       kinds of sentences available; **(4)** the kinds of sentence and the sentencing range
    established for-- **(A)** the applicable category of offense committed by the

8       applicable category of defendant as set forth in the guidelines-- **(i)** issued by the
    Sentencing Commission pursuant to section 994(a)(1) of title 28, United States

9       Code, subject to any amendments made to such guidelines by act of Congress
    (regardless of whether such amendments have yet to be incorporated by the

10      Sentencing Commission into amendments issued under section 994(p) of title
    28); and **(ii)** that, except as provided in section 3742(g), are in effect on the date

11      the defendant is sentenced; …; **(5)** any pertinent policy statement-- **(A)** issued by
    the Sentencing Commission pursuant to section 994(a)(2) of title 28 United

12      States Code, subject to any amendments made to such policy statement by act
    of Congress (regardless of whether such amendments have yet to be

13      incorporated by the Sentencing Commission into amendments issued under
    section 994(p) of title 28); and **(B)** that, except as provided in section 3742(g), is

14      in effect on the date the defendant is sentenced. **(6)** the need to avoid
    unwarranted sentence disparities among defendants with similar records who

15      have been found guilty of similar conduct; and **(7)** the need to provide restitution
    to any victims of the offense.

16      In the instant action when all of the relevant factors are considered Mr. Williams should

17  receive a sentence of 70 months.

18      Mr. Williams comes from a good family and he has a lot of family support.  He graduated

19  from high school, and his life was on track prior to becoming involved in the instant offense.

20  After spending two years at Contra Costa Community College he was fortunate enough to earn

21  a football scholarship to Montana State and started his first year on the team.

22      Unfortunately Mr. Williams began to drift after his grandmother died.  Mr. Williams was

23  extremely close to his grandmother and her death profoundly affected him.  Instead of dealing

24  with the grief he felt he turned to drugs and started smoking marijuana on an almost daily basis.

25  As the character letters, and comments from people in the PSR demonstrate, Mr. Williams was

1  a good person who touched the lives of many people in a positive way.  Mr. Williams

2  involvement in the instant offense is not indicative of the person he is, or who he will become.  A

3  sentence of 70 months for Mr. Williams will have a dramatic affect on his life and will deter him

4  from becoming involved in any criminal activity in the future.

5        The other people involved in the criminal activity with Mr. Williams received sentences

6  ranging from 21 months to 132 months.  The range in sentences reflects the differences in

7  criminal history, cooperation, and their perceived involvement in the instant offense.  Richard

8  Gatewood, who described himself as Mr. Williams' equal received a sentence of 70 months.

9  Thus, a sentence of 70 months avoids a disparity in sentencing defendants involved in the same

10  criminal conduct, and with the same level of culpability.

11        Moreover, prior to his arrest for the instant offense Mr. Williams had never been in jail.

12  Thus, a sentence of 70 months is more than sufficient to deter Mr. Williams from becoming

13  involved in any criminal activity in the future.  *See United States v. Mishoe*, 241 F.3d 214, 220

14  (2d Cir. 2001) (when determining what is a reasonable sentence the court may consider the

15  disparity between past sentences and the potential punishment for the current offense).

16  **II.  MR. WILLIAMS QUALIFIES FOR THE SAFETY VALVE, THEREBY ENABLING THE
       COURT TO SENTENCE TO LESS THAN THE MANDATORY MINIMUM.**

17

18        Mr. Williams may receive a sentence of 70 months only if the Court finds he is eligible for

19  the safety valve.  To be found eligible for the safety valve Mr. Williams must meet five criteria:

20       **(1)** the defendant does not have more than 1 criminal history point, as
       determined under the sentencing guidelines; **(2)** the defendant did not use

21       violence or credible threats of violence or possess a firearm or other dangerous
       weapon … in connection with the offense;**(3)** the offense did not result in death or

22       serious bodily injury to any person; **(4)** the defendant was not an organizer,
       leader, manager, or supervisor of others in the offense, as determined under the

23       sentencing guidelines and was not engaged in a continuing criminal enterprise,
       as defined in section 408 of the Controlled Substances Act; and **(5)** not later than

24       the time of the sentencing hearing, the defendant has truthfully provided to the
       Government all information and evidence the defendant has concerning the

25

1

2
offense or offenses that were part of the same course of conduct or of a common
scheme or plan ….

3
Mr. Williams has the burden of demonstrating that he qualifies for the safety valve.  *See*

4
*United States v. Mejia-Pimental*, 477 F.3d 1100, 1104 (9th Cir. 2006).  There is no dispute that

5
Mr. Williams meets the first three criteria.  He does not have any criminal history points, he did

6
not use violence during the commission of the offense, and the offense did not result in death or

7
serious bodily injury to anyone.  Mr. Williams, through his attorneys, has informed Assistant

8
United States Attorney Joe Thaggard that he is "willing and able to satisfy the fifth criteria; to wit,

9
truthfully provide to the Government all information and evidence [he] has concerning the

10
offense or offenses that were part of the same course of conduct or a common scheme or plan."

11
However, probation has recommended that Mr. Williams' offense level be enhanced by

12
two points pursuant to USSG § 3B1.1(c), for being a leader or organizer of Richard Gatewood

13
and Randy Gatewood.  The government bears the burden of any sentencing enhancements

14
beyond a preponderance of the evidence.  *See United States v. Snipe*, 515 F.3d 947, 954-55

15
(9th Cir. 2008).

16
Pursuant to USSG § 3B1.1(c), a defendant qualifies for a two-level enhancement if he is

17
an organizer or leader in any criminal activity.  In the instant action Mr. Williams did not

18
supervise Richard Gatewood or Randy Gatewood.

19
Mr. Williams did not supervise Richard Gatewood, rather they were equals in the drug

20
conspiracy.  The genesis of the criminal activity started with Richard and Mr. Williams.  Mr.

21
Williams knew someone who could supply cocaine, and Richard had the money to start the

22
initial transaction.  When Mr. Williams left Montana to go to California, Richard handled things in

23
Montana.  Additionally, after he was arrested Richard told the police that he and Mr. Williams

24
were equals in the drug conspiracy.  David Burdett, who bought drugs from Mr. Williams stated

25
during his interview with the police that he considered Mr. Williams to be the leader of the

1  organization.  However, Mr. Burdett's personal knowledge of Mr. Williams was limited.  Mr.

2  Burdett did not deal with Mr. Williams after June 2006 because he found another source for his

3  cocaine.  Richard Gatewood was involved in the criminal activity from the beginning and his

4  money was used for the initial purchase.  Thus, Mr. Williams did not supervise Richard

5  Gatewood.

6          Randy Gatewood was part of the criminal activity, but he joined late and he exercised his

7  own control over his activities.  It should be noted that Randy's description of his involvement in

8  the offense does not make sense.  Randy stated that he arrived in Montana in the beginning of

9  2006, but he did not actually see Mr. Williams with cocaine until May 2006.  This is not to

10  suggest that Mr. Williams was not selling cocaine prior to May 2006, but merely to show that

11  Randy was trying to minimize his role in the conspiracy.  If his FBI-302 is to be believed, Randy

12  met Mr. Williams at some point between 2001 and 2003, while Mr. Williams was attending

13  Contra Costa Community College.   Randy's statement that he arrived in Montana in early 2006,

14  but that he did not actually see Mr. Williams with cocaine until May 2006, when the drug

15  conspiracy was approximately a year old, does not make sense, especially if he was a runner.

16          Randy stated that he was the "runner" or delivery person for the drugs.  However, he

17  reported that he did not receive any compensation for this work until he decided to start

18  charging off the top.  Randy's description of his role is patently absurd.  He never explains why

19  he would agree to distribute cocaine for Mr. Williams without the expectation that he would be

20  paid.  Quite simply someone does not become a drug dealer minus the expectation that they

21  were going to paid for their work.  These gentlemen were not involved in an altruistic business.

22  In truth the relationship between Mr. Williams and Randy Gatewood was similar to Mr. Williams'

23  relationship with Mr. Burdett and Mr. Pinkerton.  Mr. Williams would front the cocaine to Randy

24  and then Randy would make his own sales and arrangements.  Thus, Mr. Williams did not

25

1  supervise or lead Randy, and the government cannot meet their burden to establish that Mr.

2  Williams was a leader or organizer as defined in § 3B1.1.

3  **CONCLUSION**

4  Mr. Williams is a young man who had led a law-abiding life until his involvement in the

5  instant offense.  He has the tools and family support to be a productive member of society.  A

6  sentence of 70 months for someone who has never been to prison is more than sufficient to

7  address the sentencing goals of 18 U.S.C. § 3553.  Thus, for all of the reasons cited herein Mr.

8  Williams respectfully requests that the court sentence him to 70 months.

9  COOPER LAW OFFICES

10  DATED:  May 27, 2008                    /s/COLIN L. COOPER
                                          Attorneys for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25